JAMES T. MINCHIN

v.

THE SECOND NATIONAL BANK OF PATERSON et al.

On September 13th, 1881, the complainant, on behalf of himself and other creditors, filed a bill against the New York Silk Manuf. Co., a foreign corporation doing business in this state, alleging that it was insolvent and praying for the appointment of a receiver of its assets in this state, and for an injunction restraining it from receiving any of the debts due to it, and from paying or transferring any of its debts, money or effects. On October 21st, 1881, the injunction was issued, and early in November, 1881, a receiver was appointed. On October 3d, 1881, the defendant issued an attachment out of the Hudson county circuit court, under which all the silk company's property in this state was attached and other creditors came in. On October 29th, 1881, the defendant issued another attachment out of the same court, under which the same property was seized, and other creditors came in. Both attachments were afterwards removed into the United States circuit court for New Jersey, and the president of the corporation entered an appearance in the attachments in December, 1881. On demurrer to a supplemental bill filed by the complainant against the defendant and the other creditors admitted under the attachment and the auditor—Held,

(1) That the complainant had no standing as a party; that the suit, if maintainable, ought to have been brought in the name of the receiver.

(2) That the power of the court, in insolvency, over foreign corporations is mainly over their property or assets in this state; that the lien of the defendants and other creditors under the attachments was, under the circumstances, entitled to preference as against the receiver, and that the United States court had jurisdiction, and this court therefore could not interfere.

Bill for relief. On demurrer.

Mr. P. Stevenson, for demurrants.

Mr. J. W. Taylor, for complainant.

THE CHANCELLOR.

The bill is filed by a person who is a creditor and stockholder of the New York Silk Manufacturing Company, a corporation under the laws of the state of New York. It states that on or

Minchin *v.* Second Nat. Bank.

about September 13th, 1881, a bill was filed in this court by the
complainant for himself and the other creditors against the com-
pany, and the defendants Grier and Harris, alleging that the
corporation was insolvent and had suspended its business for
want of funds to carry it on, and praying an injunction and the
appointment of a receiver ; that although process has been issued
(the bill does not state when it was issued) and served, none of
the defendants have appeared in the suit; that on the 21st of
October in that year, about five weeks after the filing of the bill,
an injunction was issued, and early in November following, a
receiver was appointed under the act concerning corporations,
and that the receiver, immediately after his appointment, gave
bond and entered on the performance of his duties.    The bill
further states that on the 3d of October, 1881, about three
weeks after the bill was filed, and about the same time before the
injunction was granted, the Second National Bank of Pater-
son, a creditor of the insolvent company, sued out of the circuit
court of Hudson county, in this state, an attachment against the
company, under which all its property and assets in that county,
which were all it had in this state, were levied upon and seized,
and that certain other creditors were admitted under the attach-
ment; that on the 29th of the same month of October, the bank
sued out another attachment against the company in the same
court, and under it attached the same property, and that other
creditors were admitted under that attachment also ; that on the
6th of December, after the injunction and the appointment of
the receiver, Grier unwarrantably assuming to act for the com-
pany, caused its appearance to be entered in the attachments, and
so created a preference in favor of the bank and the other cred-
itors who had appeared in those suits; that the bank and those
creditors, at the time of their proceedings in the attachment, knew
of the proceedings in insolvency in this court, and knew, also,
the fact that the company was insolvent; that the attachment
suits were removed to the circuit court of the United States for
the district of New Jersey, and that application on behalf of the
receiver has been repeatedly made in both of the above-men-
tioned courts to vacate and set aside the appearances, and quash

and dismiss the attachments, but the bank refused to consent to the granting of those applications, and the courts declined to grant them without such consent, because, among other reasons, the receiver had no standing in the suits and could not be heard in them, and the courts had no power to grant the relief in the proceedings.  The bill further states that the auditor in the attachments refuses to deliver up the goods to the receiver, and threatens to sell them in order to apply the proceeds to the payment of the debts of the bank and the other creditors under the attachments.  It also alleges that the property can be sold to a much better advantage through the receiver than through the auditor.  It is exhibited against the company and Grier and Harris, the bank and the other creditors who were admitted under the attachments, and the auditor, and it prays that the complainant may have the same relief against the defendants that he might have had if the facts thereinbefore stated by way of supplement, had been stated in the original bill; that the bank may be enjoined from further prosecuting the attachment suits, or procuring or insisting on a sale of the attached property, and that the auditor may be restrained from selling, and may deliver up the property to the receiver, and that if the property be sold under the attachments, and the bank and the other creditors admitted under the attachments shall, under those proceedings, receive more than the share they would have got had the estate been settled and administered under the insolvency proceedings here, they may account for and pay to the receiver the excess, and that in case of sale they and the auditor may account for and pay the receiver the difference between the price for which the property shall be sold and its appraised or real value.  The defendants have demurred for want of equity.

The first question to be considered is whether the complainant has any standing to maintain this bill.  The original bill was, as has been stated, a bill for the appointment of a receiver under the act concerning corporations, to collect, receive and administer the property and assets of the corporation.  Under it a receiver was appointed, who was duly qualified.  He thereupon became vested as far as practicable, seeing that the corporation

is a foreign one, with the powers conferred by the statute on receivers of insolvent corporations, and as such receiver he represented from thenceforth the creditors and stockholders of the company. If this suit can be maintained at all, it is he who should bring it. He has not refused to act in vindicating the rights of creditors and stockholders in the matters which are the subject of this litigation, and he is not even a party to the bill. That he has, and had when this bill was filed, the power to bring a suit for the purposes which this suit is designed to answer, is clear. The act, by the 72d section, vested in him "full power and authority to demand, sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description belonging to the company." By the 77th he had "full power and authority, whenever he should deem it proper, to institute suits at law or in equity in his own name as receiver, for the recovery of any estate, real or personal, debts, rights in action, damages and demands, whatsoever and wheresoever existing in favor of the company at the time of the insolvency or suspension of business, or accruing subsequently thereto." *Rev. pp. 189, 191.* In *Smith* v. *Trenton Del. Falls Co., 3 Gr. Ch. 505,* it was held that after the appointment of receivers of an incorporated company, a bill could not be maintained by a creditor of the company to settle the validity and priority of claims and encumbrances on the property of the company. In *Chester* v. *Halliard, 7 Stew. Eq. 341,* the question now under consideration was not raised. In *Rankine, Receiver,* v. *Elliott, 16 N. Y. 377,* it was held that the right of action against the stockholders of an insolvent corporation to recover the unpaid amount of their subscription, vested in the receiver, and a judgment creditor who had brought an action against a stockholder, which was begun after the order for sequestration, but before the appointment of the receiver, was restrained from prosecuting his suit. In *Atty. Gen.* v. *Guardian M. L. Ins. Co., 77 N. Y. 272,* a suit brought for the recovery of the assets of the company before a receiver was appointed, was, at the in-

stance of the receiver, who had brought a suit for the same object, enjoined on the ground that the receiver was the proper party to bring the suit. In the recent case of *Brinckerhoff* v. *Bostwick, 88 N. Y. 52,* in a suit by stockholders of a national bank against directors, to recover compensation for losses and misapplication of the funds through the negligence and misconduct of the directors, it was held that in such case the corporation is the proper party to bring suit, unless it refuses to sue, or the parties whom it is sought to charge and who, therefore, must be made parties to the suit, have control of it, or unless its property be in the hands of a receiver, in which last case it must be brought by him unless he refuses or is the person or one of those against whom the suit is brought. The suit in such cases, therefore, is to be brought in the name of the corporation or the receiver, unless sufficient cause appear to the contrary. Here no cause appears or is alleged why the receiver should not bring the suit. He is the representative of the corporation, of the creditors and stockholders, and has title to all the property and rights of the corporation. The complainant is merely one of the creditors and stockholders. In the absence of a refusal on the part of the receiver, or of the fact that the receiver stands in such a relation of personal involvement in liability in respect to the matters as to which relief is sought, or other valid reason, the complainant cannot maintain the suit. The demurrer, therefore, must be allowed on this ground.

But further, apart from this objection, the suit cannot be maintained on the merits of the case as presented by the bill, if it had been brought by the receiver. The act concerning corporations makes the remedies thereby provided in case of insolvency applicable to foreign corporations, so far as practicable. Its language is, that foreign corporations doing business in this state shall be subject to all the provisions of the act, so far as they can be applied to such corporations. *Rev. p. 196 § 103.*

Obviously, there are provisions of the act which cannot be applied to such corporations; for example, this court cannot hinder such corporations from exercising their franchises, except as it may enjoin them from exercising them in this state. It can

Minchin v. Second Nat. Bank.

sequester their property here and administer it for the benefit of creditors and stockholders, but it can do but little more. A foreign corporation coming into this state and doing business here, is indeed liable here on its contracts made here, but the question under consideration is not a question of liability to suit. It is a question of power over the property of the foreign corporation to administer it for the benefit of creditors and stockholders. As to the power of this court over the corporate existence or the exercise of its franchises, that has already been adverted to. The only question for consideration is, as to the character and extent of the power over the corporate property, for the purpose of administering it for the benefit of creditors or stockholders residing here. In the language of the New York supreme court, in *De Bemer* v. *Drew, 57 Barb. 438,* this court cannot regulate the internal affairs of foreign corporations, nor enforce any remedy beyond the limits of this state; it cannot annul or forfeit their charters, but it can and ought to provide for the collection of debts against them, when they or their property are brought within the jurisdiction of the courts of this state. The foreign corporation doing business here is subject to the provisions of our statute, so far as its property in this state is concerned. The proceeding is, practically, merely a proceeding *in rem,* and as such must be subject to prior liens, created by prior proceedings in attachment, and the vigilant creditor who obtains such prior lien at law ought not to be, and cannot be, deprived of his advantage. *Hubbard* v. *Hamilton Bank, 7 Metc. 340.*

The efficacy of the above-quoted provision of our statute as to foreign corporations, is in securing to creditors and stockholders, citizens of this state, a just application of the property in this state of those corporations when insolvent. In the case in hand, the bill was filed on the 13th of September, but no injunction was issued upon it until the 21st of October, five weeks afterwards, and then the corporation was not restrained from removing its property from this state to its place of location or elsewhere, but only from receiving any of the debts due to it, and from paying or transferring any of its debts, moneys or effects. In the meantime, on the 3d of October, the bank sued

out an attachment in the Hudson county circuit court, and under it attached all the property of the company in this state. Under that attachment other creditors were admitted.

After the injunction had been issued, but before the receiver was appointed, the bank issued another attachment out of the same court, under which the same property was attached, and other creditors were admitted. The mere filing of a bill in such case, does not divest the company of its property. The appointment of a receiver under the statute, operates as a transfer. Said Chancellor Halsted, in *Corrigan* v. *Trenton Del. Falls Co., 3 Hal. Ch. 489, 496,* "The statute, and the appointment of receivers under it, are a conveyance or transfer of all the property of the insolvent company to the receivers for the benefit of the creditors of the company, to be distributed in the mode pointed out by the statute." See, also, to the same effect, *Freeholders of Middlesex* v. *State Bank at New Brunswick, 2 Stew. Eq. 268, 274.* In *the matter of Waterbury, 8 Paige 380,* it was held that where a creditor of a corporation, by legal diligence, and without any voluntary assistance from the corporation or its officers, obtained a legal lien on its real or personal estate by judgment, or the levying of an execution, before the order of the court was obtained for the appointment of a receiver and the dissolution of the corporation, he could not be deprived of the preference he had thus acquired. In the case in hand, the filing of the bill of course did not prevent the corporation from removing its property out of the jurisdiction, and so beyond the reach of its creditors here. And how were such creditors to know that the bill had been filed? Are the creditors in such cases required to wait before taking steps to secure a lien on the property, until they can ascertain by search of the files of this court, whether a bill has been filed in insolvency against the corporation? Or, are they at liberty to proceed at law with what dispatch they may, to secure a lien on the property? Surely the latter. And having obtained the lien, they are entitled to the benefit of their diligence. In this case, it may be remarked, the proceeding at law was by attachment, which, in its nature, is for the benefit of all applying creditors. Moreover, when the

bill was filed, the case made by it was not sufficient to warrant even an injunction, and so the case stood for five weeks, so far as appears, without action, and a receiver was not appointed until nearly two months after the filing of the bill.

But it is urged that the bill alleges that the president of the company, in fraud of the statute, and with a view to giving to the bank and to the creditors who had been admitted under the attachments a preference, entered the appearance of the company to those suits.   The appearance was entered in December, about a month after the appointment of the receiver.   The injunction prohibited the company and its president and directors from paying and transferring any of its debts, moneys or effects, but it did not prevent them from appearing to an attachment, and if the effect of the appearance was (as it was in fact) to give to the bank and the other creditors who had been admitted under the attachments a preference, it was the result of a lawful act, and one which was (especially under the circumstances) entirely legitimate.   The bill does not allege that the debts thus preferred or the issuing of the attachments were not *bona fide.*

The bill seeks relief against the auditor in attachment, who is an officer appointed by the federal court.   It prays that he may be restrained from selling under the authority of that court. That court has jurisdiction under the attachments, and the jurisdiction under the attachments is prior to that which this court obtained over the property by the proceedings on the original bill in this suit.   As between the federal and state courts, the rule is, that that court which first obtains jurisdiction shall retain it to the end.   *Riggs* v. *Johnson Co., 6 Wall. 166; New Jersey Zinc Co.* v. *Franklin Iron Co., 2 Stew. Eq. 422:*   If the attachments were valid liens as against the receiver, as I think they were, this suit cannot be maintained, and if they were not, the complainant cannot maintain it.   The demurrer will be allowed.